ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **AUTORIDAD PARA EL REDESARROLLO LOCAL DE ROOSEVELT ROADS**<br><br>Peticionaria<br><br>v.<br><br>**UNITED REAL ESTATE INC. y OTROS**<br><br>Recurrido | TA2026CE00565 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo**<br><br>Civil Núm.: **CE2024CV00039**<br><br>Sobre: Desahucio, Cobro de Dinero - Ordinario |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos, la Autoridad Local de Roosevelt Roads (Autoridad o Peticionaria) mediante escrito de *certiorari* presentado el 7 de mayo de 2026. Nos solicitó la revocación de la *Resolución* emitida y notificada el 19 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI).[1] Mediante el referido dictamen, el foro primario declaró No Ha Lugar a la *Solicitud de Sentencia Sumaria Parcial* presentada por la Peticionaria.[2]

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari*, revocamos la determinación recurrida y se ordena la celebración de una vista evidenciaria.

### I.

El caso de marras tiene su génesis el 8 de abril de 2024, cuando la Autoridad presentó una *Demanda de Desahucio* en contra

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 79.
[2] *Íd.*, Entrada Núm. 69.

de United Real Estate, Inc. (United o Recurrida).[3] La Peticionaria alegó que suscribieron un contrato de arrendamiento sobre unas 20.5 cuerdas de terreno ubicadas en la Antigua Base Naval Roosevelt Roads para el desarrollo de un "Resort Style Community". Para ello, la Peticionaria indicó que las partes acordaron un "Project Schedule", cuyo incumplimiento activaba la cláusula de cancelación. Informó que, según el "Project Schedule" el proyecto se llevaría a cabo en 2 fases, la primera tomaría entre 1 a 180 días mientras que la segunda comenzaría a los 180 días y se extendería hasta los 960 días. Sin embargo, la Peticionaria adujo que, pasados alrededor de 2,000 días, el proyecto no se encuentra cercano a completarse. A esos fines, el 2 de marzo de 2024, la Peticionaria envió una misiva dirigida a United, en la cual le concedió un término de 60 días para desalojar la propiedad. Por lo cual, le solicitó al TPI que declarara Ha Lugar la acción de desahucio y ordenara el lanzamiento de United, toda vez que, a la fecha de presentación del pleito, aún continuaban en los terrenos. Además, solicitó la cantidad adeudada de $303,074.46, más un 6% de interés legal por concepto de utilidades.

Tras varias incidencias procesales, el 14 de octubre de 2025, United presentó su *Contestación a Demanda, Reconvención y Demanda contra Terceros*.[4] Mediante esta comparecencia, la Recurrida señaló que la Autoridad obstaculizó de manera intencional el cumplimiento del contrato de arrendamiento. Informó que la Autoridad se comprometió a colaborar junto a esta sobre aquellos asuntos que requirieran la autorización, intervención o aprobación de la Peticionaria. Sin embargo, la Recurrida detalló varias instancias en los que la Peticionaria incumplió con sus obligaciones. Así las cosas, le solicitó al TPI que ordenara el

---

[3] *Íd.*, Entrada Núm. 1.
[4] *Íd.*, Entrada Núm. 57.

cumplimiento específico del contrato; la indemnización por daños económicos por una cantidad no menor de $10,469,110.00; más la indemnización por los daños y perjuicios causados producto de su conducta dolosa y de mala fe, por una cantidad estimada de $3,000,000.00.

Posteriormente, el 13 de febrero de 2026, la Peticionaria incoó una *Solicitud de Sentencia Sumaria Parcial*, en la que alegó la inexistencia de hechos en controversia que impidan la disposición del caso mediante la vía sumaria.[5] Señaló que, a pesar del término concedido tras la cancelación del contrato, la Recurrida ha persistido en la propiedad. La Peticionaria argumentó que las imputaciones de incumplimiento presentadas por United no constituyen un hecho material en controversia en vista de que la causa de acción es sobre un desahucio. Apuntó que la controversia gira en torno a la existencia de un contrato válido y vigente que legitime la ocupación de la propiedad.

Así las cosas, el 9 de marzo de 2026, United presentó su *Oposición a "Solicitud de Sentencia Sumaria Parcial"*, en la cual insistió en la existencia de controversias medulares que ameritan la celebración del juicio en su fondo.[6] La Recurrida sostuvo que no procede ordenar el lanzamiento de la propiedad mientras se encuentra en controversia la validez de la terminación del contrato. Agregó que se requiere que se lleve a cabo un descubrimiento de prueba amplio y liberal.

Analizada la postura de las partes, el 19 de marzo de 2026, el foro primario emitió una *Sentencia* en la que declaró No Ha Lugar la solicitud de sentencia sumaria presentada por la Peticionaria.[7] Concluyó que existe una controversia genuina sobre la validez de la

---

[5] *Íd.*, Entrada Núm. 69.
[6] *Íd.*, Entrada Núm. 74.
[7] *Íd.*, Entrada Núm. 79. Emitida y notificada el 19 de marzo de 2026.

cancelación del contrato que justifica la celebración de un juicio en su fondo. Más aún cuando las partes solicitaron que el caso se dilucide mediante la vía ordinaria.[8]

En desacuerdo, el 6 de abril de 2026, la Peticionaria presentó una *Solicitud de Reconsideración*, en la cual arguyó que la Recurrida no presentó prueba admisible que controvirtiera los hechos propuestos como incontrovertidos.[9] Específicamente señaló que United no presentó evidencia de que los incumplimientos con el "Project Schedule" haya sido por la obstaculización de la Autoridad. Ante lo cual, insistió en que estos hechos se deben tener como admitidos. Por otro lado, la Peticionaria sostuvo que, a pesar de que el pleito se convirtió en uno ordinario, ello no altera el derecho aplicable o los hechos esenciales para la procedencia del remedio solicitado.

Por su parte, el 7 de abril de 2026, el TPI declaró No Ha Lugar a la *Solicitud de Reconsideración* instada por la Autoridad.[10]

Inconforme, el 7 de mayo de 2026, la Peticionaria presentó el recurso de *Certiorari* ante nos y planteó el siguiente señalamiento de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE SENTENCIA SUMARIA PARCIAL POR CONCLUIR QUE EXISTEN CONTROVERSIAS DE HECHOS MATERIALES QUE LE IMPIDE CONCEDER SUMARIAMENTE LA SOLICITUD DE DESAHUCIO EN CONTRA DE URE.**

Por su parte, el 21 de mayo de 2026, United presentó una *Moción en Cumplimiento de Orden y Oposición a Expedición del Auto de Certiorari por no Cumplir con la Regla 40 del Reglamento del Tribunal de Apelaciones.*

---

[8] Véase, SUMAC TPI, Entrada Núm. 50.
[9] *Íd.*, Entrada Núm. 84.
[10] *Íd.*, Entrada Núm. 86.

Así, con el beneficio de la comparecencia de ambas partes y del expediente ante nos, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del tribunal. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 174-175 (2020). En los casos civiles, la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, delimita los asuntos aptos para revisión interlocutoria ante el Tribunal de Apelaciones mediante el recurso de *certiorari. Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, *supra*, pág. 1004; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 486-487 (2019); *IG Builders v. BBVAPR*, 185 DPR 307, 336-337 (2012). La citada regla establece que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Regla 52.1 de Procedimiento Civil, *supra* (Énfasis suplido); véase además, *Scotiabank de Puerto Rico v. ZAF Corporation*, *supra*, pág. 487.

La característica distintiva del recurso de *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR*, *supra*, pág. 338. A pesar de lo anterior, la discreción no debe hacerse en abstracción del resto del derecho, sino que debe ejercerse de forma razonable con el propósito de llegar a una opinión justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). Precisamente, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, instituye los criterios que se deben tomar en consideración para poder ejercer sabiamente la facultad discrecional de expedir un auto de *certiorari*. Estos factores son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados,

procede que este foro superior se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty*, *supra*, págs. 96-97.

**B.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Service*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad o parte de la reclamación, y así se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. Regla 36.3(e) dispone que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

Al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v.*

*Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Ramos Pérez v. Univisión,* 178 DPR 200, 216 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 110 (2015). Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión, supra,* pág. 213.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, cualquier duda es insuficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas, supra.* En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. *Meléndez González et al. v. M. Cuebas, supra* (*citando a Ramos Pérez v. Univisión, supra,* pág. 214). De esta manera, entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón, supra,* pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra,* pág. 44. De esta forma, no puede descansar en meras aseveraciones o negaciones de

sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

Además, nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 278 (2021).

De modo que, la sentencia sumaria resulta adecuada en los casos donde no existen controversias de los hechos esenciales que hagan necesaria la celebración de un juicio. *Batista v. Sucn. Batista et al.*, 2025 TSPR 93, 216 DPR __ (2025). A esos efectos, solo resta aplicar el derecho a los hechos no controvertidos. *Íd.*

De otra parte, en *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, R. 36, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte que se opuso a la petición de sentencia sumaria, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes

no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra. Íd.*

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

### C.

El desahucio es el mecanismo disponible para el dueño de un inmueble arrendado, "recuperar la posesión de hecho de una propiedad, mediante el lanzamiento o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna". *Fernández & Hno. v. Pérez*, 79 DPR 244, 247 (1956). *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016). En un procedimiento sumario, se intenta recobrar la posesión del inmueble, sin tomar en consideración algún conflicto de título. *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408, 431 (2009). Así las cosas, existirá un conflicto de título si el demandado presenta prueba suficiente que demuestre el derecho a ocupar el inmueble en controversia y que tiene un título tan bueno o mejor que el del demandante. *Íd.*

El procedimiento sumario responde al interés del Estado en atender rápidamente la reclamación del dueño de un inmueble que ve interrumpido el derecho a poseer y disfrutar de su propiedad. *ATPR v. SLG Volmar-Mathieu, supra*, pág. 9. La necesidad de que ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario, no puede llevarnos a configurar una regla automática. *Turabo Ltd. P'ship v. Velardo Ortiz*, 130 DPR 226, 241 (1992). Debido a que el único objetivo es recobrar la posesión, "en la acción sumaria debe limitarse la concurrencia o consolidación de otras acciones o defensas". *ATPR v. SLG Volmar-Mathieu, supra*, pág. 10. Por lo cual, el demandado deberá establecer los méritos de su defensa *prima facie,* sin ocasionar dilaciones innecesarias. *Crespo Quiñones v. Santiago Velázquez, supra*, pág. 432; *Mora Dev. Corp. v. Sandin,* 118 DPR 733, 750 (1987). A esos efectos, luego de solicitar la tramitación ordinaria del pleito, la reclamación estará sujeta a las reglas de litigación civil ordinaria. *ATPR v. SLG Volmar-Mathieu, supra*, pág. 10.

## III.

En el caso que nos ocupa, la Peticionaria nos solicita la revocación de la *Sentencia* del TPI en la que se declaró No Ha Lugar a la *Solicitud de Sentencia Sumaria Parcial.* En su petitorio, sostiene que la controversia gira en torno a la existencia de un contrato válido y vigente que legitime la ocupación de la propiedad. Argumenta que, ante la inexistencia de un contrato entre las partes, corresponde el lanzamiento de la Recurrida.

Según *Meléndez González et al. v. M. Cuebas, supra,* el primer paso del estándar de revisión de las solicitudes de sentencia sumaria conlleva revisar *de novo* el petitorio sumario junto a los anejos y el escrito en oposición a la solicitud de sentencia sumaria. Al amparo del segundo pilar de dicho análisis, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplen con los

requisitos de la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

En efecto, luego de un examen cuidadoso de la *Solicitud de Sentencia Sumaria Parcial* presentada por la Autoridad concluimos que cumplió cabalmente con los requisitos de forma del inciso (a) de la Regla 36.3 de Procedimiento Civil, *supra*, pues incorporó una exposición breve de las alegaciones de las partes; que no existían asuntos en controversia; la reclamación respecto a la cual fue solicitada la sentencia sumaria; una relación concisa de los hechos materiales sobre los cuales no había controversia sustancial, con indicación de la prueba documental que lo sustenta; las razones por las que debería dictarse la sentencia argumentando el derecho aplicable y el remedio que debería ser concedido.

De igual modo, la *Oposición a "Solicitud de Sentencia Sumaria Parcial"* radicada por la Recurrida cumplió con los requerimientos del inciso (b) de la Regla 36.3 de Procedimiento Civil, *supra*; a saber, incorporó una exposición breve de las alegaciones de las partes; los asuntos en controversia; la causa de acción respecto a la cual se solicitó la sentencia sumaria y las razones por las que no debía ser dictada la sentencia. A su escrito, únicamente lo acompañó una Declaración Jurada del Presidente de United. Por el restante, se limitó a señalar los anejos que formaron parte del petitorio de la Autoridad.

Atendidos los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria, ahora procedemos a evaluar como tercer paso, si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles están incontrovertidos.

Del expediente del caso ante nos, se desprende que las determinaciones de hechos formuladas por el TPI surgen incontrovertidamente del récord. Por lo cual, acogemos como hechos incontrovertidos las determinaciones de hechos realizadas por el foro primario en el dictamen recurrido. En particular, tomamos conocimiento que mediante el Hecho Núm. 8 se estableció que, conforme lo dispuesto en el Artículo 1.08 del Contrato, la Sección 18 del acuerdo entre las partes quedó "activado". En su consecuencia, colegimos que las disposiciones de la Sección 18 (18.01-18.07) se encuentran "activadas". De las referidas secciones, resaltamos lo siguiente:

> 1. De no cumplir con estas metas establecidas en el "Project Schedule", se activaría la Sección 18 del contrato, la cual dispone:
>
>> 18.01 Breach by TENANT as Cause for Termination. In addition to, and separate from, any other cause for termination set forth in this Lease Agreement or available under applicable law, each of the following events or acts shall be considered a breach and constitute cause for termination, which termination will be effective upon written notice to TENANT:
>>
>> [...]
>>
>> 18.02 Other Causes for Termination. In addition to the causes for termination set forth in Section 18.01, LANDLORD may terminate this Lease Agreement if TENANT fails to comply with any of TENANT's principal obligations hereunder within fifteen (15) days of receipt of written notice from LANDLORD requesting performance of any principal obligation. However, if TENANT shall have begun efforts toward performance within said fifteen (15) day period and continues to act diligently and makes every reasonable effort to perform, said period of fifteen (15) days may be extended by LANDLORD for a maximum period of sixty (60) days, as necessary for TENANT's performance of any principal obligation. Principal obligations under this Lease Agreement include, but are not limited to, the following:
>>> (i) Intentionally omitted;
>>> (ii) The obligation to comply with the milestones established in the project

schedule here included as Exhibit B of the present agreement.

2. A esos fines, el artículo 18.05 establece el procedimiento a llevar a cabo para la cancelación del contrato:

(ii) LANDLORD may terminate this Lease Agreement upon TENANT's breach of any of its obligations hereunder, or upon occurrence of any of the events of termination set forth in Sections 18.01 and 18.02 hereof. Said notice shall be given by certified mail with return receipt requested. The termination of this Lease shall become effective on the date indicated in said notice.

3. El artículo 19.01 sostiene que, pasado el término conferido para la terminación del contrato, el arrendatario deberá abandonar los predios:

19.01 Surrender of Possession. **Upon termination of this Lease Agreement, at the expiration of the Term or otherwise, TENANT must vacate and surrender the Leased Premises to LANDLORD** in good condition, reasonable wear and tear excepted, including all improvements, changes, or alterations made thereto with LANDLORD's consent and which LANDLORD does not require to be removed. (Énfasis suplido).

Ahora bien, corresponde que analicemos si la prueba que tuvo ante sí el foro primario era suficiente para determinar que procedía dictar sentencia sumaria, según solicitada por la Peticionaria. Por su parte, el TPI declaró No Ha Lugar a la *Solicitud de Sentencia Sumaria Parcial* presentada por la Autoridad. Pues concluyó que existe controversia sobre la existencia de una deuda referente a las utilidades y el incumplimiento del desarrollo conforme al "Project Schedule".

En síntesis, la Autoridad argumenta que de las propias aseveraciones de la Recurrida constituyen una admisión del incumplimiento de su obligación. A su juicio, este incumplimiento activa la sección 18, la cual establece el procedimiento a seguir para la cancelación del contrato. En consecuencia, y en cumplimiento con lo pactado, el 2 de marzo de 2024, la Peticionaria dio por

finalizada la contratación entre las partes. Asimismo, la Autoridad aduce que United se ha mantenido en su propiedad ilegalmente. Por lo cual sostiene que, ante la inexistencia de un contrato, procede la solicitud de desahucio y, consecuentemente, el lanzamiento de la Recurrida.

Por otro lado, United expone que los señalamientos referentes al incumplimiento del contrato por parte de la Peticionaria no son planteamientos independientes de la causa de acción del desahucio. Muy por el contrario, arguye que las controversias están relacionadas, toda vez que el desahucio depende de la validez de la cancelación del convenio. Por tal motivo, la Recurrida insiste en que es necesario que se dilucide si la Autoridad actuó conforme a lo pactado. Adelantamos que no le asiste la razón. Veamos.

El objetivo del desahucio es recobrar la posesión del inmueble, sin tomar en consideración algún conflicto de título. *Crespo Quiñones v. Santiago Velázquez, supra.* El procedimiento sumario responde al interés del Estado en atender rápidamente la reclamación del dueño de un inmueble que ve interrumpido el derecho a poseer y disfrutar de su propiedad. *ATPR v. SLG Volmar-Mathieu, supra*, pág. 9. Por lo cual, el demandado deberá establecer los méritos de su defensa *prima facie*, sin ocasionar dilaciones innecesarias. *Crespo Quiñones v. Santiago Velázquez, supra.*

Del expediente ante nuestra consideración se desprende la existencia de un título que permite la ocupación de la propiedad (Lease Agreement). Igualmente, la Peticionaria incluyó la misiva enviada a United mediante la cual notificó la cancelación del contrato debido al incumplimiento contractual sobre el desarrollo de la obra. Particularmente en la carta enviada el 2 de enero de 2024, la Peticionaria informó a United que incumplió con el artículo 18.02 referente a las obligaciones principales asumidas en el contrato. En consecuencia, la Autoridad dio por terminada la relación

contractual y le otorgó a la Recurrida un término de sesenta (60) días para desalojar la propiedad. Por último, la Autoridad presentó una Certificación emitida por la Oficina del Contralor la cual acredita que, a la fecha de 4 de diciembre de 2025, no existe ningún contrato vigente entre las partes.

Por otro lado, United sostiene que debe permanecer en la propiedad debido a que la Autoridad incumplió con sus obligaciones. Sin embargo, el Recurrido no presentó prueba suficiente para demostrar que tiene derecho a ocupar ese espacio o que la cancelación del contrato se haya apartado de los procedimientos pactados en el convenio.

A nuestro juicio, la Autoridad presentó evidencia dirigida a establecer su cumplimiento con las disposiciones y los procedimientos establecidos en el convenio para la terminación del contrato. Según la cláusula 18.02, se dispone que el propietario podrá terminar el contrato si el inquilino falla al realizar las obligaciones principales dentro de un término de quince días desde que el propietario requiera el cumplimiento. Específicamente esta sección fija como obligación principal las metas establecidas en el "Project Schedule". Conforme a lo pactado, la Peticionaria indicó que podía dar por terminada la contratación si la Recurrida incumplía con las obligaciones principales. Específicamente, la Peticionaria señaló el incumplimiento radicó en la falta de ejecución de las metas establecidas en el "Project Schedule".

A esos fines, la Peticionaria justificó que, conforme al artículo 18.05, permite que el propietario termine el contrato si ocurre alguna circunstancia establecida en la sección 18.01 o 18.02. A tenor, el propietario deberá notificar al inquilino mediante correo certificado. De la misiva cursada el 2 de enero de 2024, la Peticionaria dio por terminada las relaciones contractuales y otorgó un término de sesenta (60) días para desalojar la propiedad en virtud

del artículo 19.01, el cual exige que el inquilino entregue la propiedad tan pronto culmine el periodo otorgado por el propietario. Transcurrido el referido término, la Peticionaria aduce que la Recurrida quedó privada de algún título que legitimara la posesión del inmueble.

Ciertamente no cabe duda de que la controversia que nos ocupa versa sobre la posesión inmediata del inmueble. Ahora bien, sostenemos que el procedimiento de desahucio no constituye el vehículo procesal adecuado para adjudicar las reclamaciones por incumplimiento contractual alegadas por la Recurrida. Cabe recordar que el propósito del desahucio es devolver la posesión del bien a la parte que posea un mejor título. Por ello, cuando el título depende de la terminación de un contrato, es indispensable determinar si la cancelación se efectuó conforme a lo pactado. A tenor, se ordena al foro primario celebrar una vista evidenciaria para determinar la validez de la solicitud de la cancelación del contrato en disputa y el efecto de declarar desahucio, tomando en consideración la aplicación y el alcance de las cláusulas 18.05, 18.06 y 18.07 del convenio.

**IV.**

Por las razones discutidas anteriormente, expedimos el auto de *certiorari* y revocamos la determinación recurrida. En consecuencia, ordenamos la celebración de una vista evidenciaria conforme a la discusión que antecede. De este modo, devolvemos el caso al foro primario para la continuación de los procedimientos, según aquí previstos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones